UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Mamata Rai**

    **v.**                                            Case No. 15-cv-175-PB
                                                  Opinion No. 2016 DNH 013

**Carolyn W. Colvin,**
**Acting Commissioner,**
**U.S. Social Security**
**Administration**


**MEMORANDUM AND ORDER**

Mamata Rai challenges the Social Security Administration's denial of her claim for Supplemental Security Income ("SSI") benefits. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, I reverse the decision of the Acting Commissioner and remand for further administrative proceedings.


**I.     BACKGROUND**

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 14). See LR 9.1. Because that joint statement is part of the court's record, I need not recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

## II. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), I have the authority to review the pleadings submitted by the parties and the administrative record, and to enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st

Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

### III. **ANALYSIS**

Mamata Rai is a former refugee from Nepal who was 19 years old in June 2012, when she filed for SSI benefits. Doc. No. 11 at 1-2. Rai filed for SSI on June 19, 2012, claiming disability as of that day.[1] Id. The Social Security Administration denied Rai's SSI application, and in October 2013 a hearing was held before ALJ Dory Sutker. Id. Following that hearing, the ALJ issued a written decision denying Rai's application. Tr. at 16-25 (ALJ's written decision).

In her decision, the ALJ found at step one that Rai had not engaged in substantial gainful activity since June 19, 2012, Rai's alleged onset date. Tr. at 19. At step two, the ALJ found that Rai suffered from heart and thyroid-related severe

---

[1] The Joint Statement of Material Facts indicates that Rai's alleged onset date was July 19, 2012, but this appears to be an error, since the hearing transcript and the ALJ's decision both state that the date was *June* 19, 2012. Compare Doc. No. 11 at 1 with Tr. at 16, 35.

impairments.[2]  Tr. at 19.  At step three, however, the ALJ determined that Rai's impairments did not meet or medically equal any of the impairments listed in the relevant regulations.  Tr. at 19.  The ALJ then found that Rai retained the Residual Functional Capacity ("RFC") to perform sedentary work with certain restrictions, such as not climbing ladders, avoiding fumes and odors, and limiting her work to "uncomplicated tasks such as those that typically can be learned in thirty days or less."  Tr. at 19.  The ALJ also noted that Rai "would have unscheduled absences of not more than 1 day per month" due to her condition.  Tr. at 19.  At step four, the ALJ found that Rai had no past relevant work experience.  Tr. at 24.  She also concluded that Rai "has a limited education and is able to communicate in English."  Tr. at 24.  Lastly, at step five, the ALJ consulted a vocational expert and used the Medical-Vocational Guidelines (the "Grid") to conclude that jobs existed in the national economy that Rai could perform – and therefore Rai was not disabled.  Tr. at 24-25.

Rai requested review of the ALJ's decision, but in December 2014, the Appeals Council denied her request.  Tr. at 1.  As a

---

[2] The impairments are "mitral valve regurgitation with anterior leaflet prolapse status-post recent valve repair" and "hyperthyroidism."  Tr. at 19.

result, the ALJ's decision constitutes the Commission's final decision, and this case is now ripe for review.

Rai filed this appeal in May 2015, asserting two challenges to the ALJ's decision.  First, she claims that the ALJ failed to develop vocational evidence addressing Rai's English language limitations, and improperly concluded that Rai was "able to communicate in English."  Second, Rai argues that the ALJ erred in assessing the importance of her unexcused absences from school.  I find Rai's first argument – that the ALJ improperly assessed Rai's English skills – persuasive, and conclude that the ALJ's determination of Rai's language capabilities was conclusory and insufficiently supported by the evidence.  As a result, a remand is warranted.

The ALJ bears the burden at step five of proving that jobs exist in the national economy that the claimant can perform. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  To carry her burden, the ALJ must consider the claimant's RFC and her "age, education, and work experience."  20 C.F.R. § 404.1520(a)(4)(v).  "Education" includes "how well [claimants] are able to communicate in English since this ability is often acquired or improved by education."  20 C.F.R. § 416.964(b). "Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand

5

English to do a job, regardless of the amount of education the person may have in another language." 20 C.F.R. § 416.964(b)(5).  The ALJ, therefore, must "consider a person's ability to communicate in English when [the ALJ] evaluate[s] what work, if any, he or she can do."  Id.; see Lugo v. Chater, 932 F.Supp. 497, 502 (S.D.N.Y 1996) (Sotomayor, J.) ("Before slotting a claimant into a particular grid rule, however, the ALJ must first determine whether the claimant is conversant and literate in English.") (citing Vega v. Harris, 636 F.2d 900, 903-904 (2d Cir. 1981)).[3]

Here, the issue of Rai's language limitations arose numerous times in the record and at the hearing.  In a questionnaire submitted to the SSA, Rai's English as a Second

---

[3]  A claimant's English capabilities affect the ALJ's analysis at step five.  For example, in order to successfully apply the Grid, an ALJ must first place the claimant in an educational category, which in some instances includes determining whether the claimant is "illiterate and unable to communicate in English" or "Limited or less – at least literate and able to communicate in English."  See 20 C.F.R. Pt. 404, Subpt. P, App. 2.  Similarly, to analyze a claimant's ability to perform certain jobs, a vocational expert generally must consult the Dictionary of Occupational Titles ("DOT") and its "companion publication," the Selected Characteristics of Occupations ("SCO").  See 20 C.F.R. § 404.1566(d); SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000), at *1.  These publications outline six different levels of General Education Development ("GED"), which include "Language Development."  See Doc. No. 14-1 at 2-4, 11-14.  Once a claimant has been assigned a GED level, the DOT indicates what potential jobs a claimant at that level may perform.  See 20 C.F.R. § 404.1566(d); see also Doc. No. 14-2.

Language (ESL) teacher Genevieve Munoz noted that Rai's "English is not very good and she does not understand much." Tr. at 166. Munoz indicated that as a "familiar listener," she could only understand Rai 1/2 to 2/3 of the time when the topic of conversation was known, and no more than 1/2 of the time when the topic was unknown. Tr. at 169. Munoz clarified that Rai's difficulty speaking English was a "language problem, not a learning disability." Tr. at 166.

In addition, state medical reviewer Jonathan Jaffe noted in his report that Rai "speaks little English, primary language is Nepal." Tr. at 59. Similarly, state disability adjudicator Sherri Connor indicated in her "Assessment of Vocational Factors" that Rai had "LIMITED ENGLISH." Tr. at 62 (emphasis in original). Using the Grid, Connor determined that Rai belonged in category 201.23, which applies to young individuals who are "illiterate or unable to communicate in English." Tr. at 62-63; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.23. Moreover, in a "Disability Report - Field Office," an interviewer noted that Rai "speaks nepali," "her english is very limited," and she "brought in an interpreter" to the interview. Tr. at 143. On another form, Rai indicated that "No," she could not "speak and understand English;" "Yes," she could "read and understand English;" and "No," she could not "write more than [her] name in

7

English."  Tr. at 145.  In Rai's appeal documents and medical records, her English problems are consistently mentioned.  See, e.g., Tr. at 187 ("Limited ability to communicate in English"), 194 ("[Rai] comes in now with [a] translator").

At the hearing before the ALJ, Rai appears to have communicated mostly through a Nepali interpreter.[4]  See Tr. at 31-44 (hearing transcript).  The ALJ engaged Rai in a brief exchange of questions, mostly of a biographical nature (although as explained above, it is unclear whether or not Rai answered directly or through an interpreter).  Tr. at 36-38.  At one point, Rai's representative stated that she "does understand some English, so simple questions . . . are not going to be a problem."  Tr. at 36.  Rai also stated that she had started, but not finished, the eleventh grade; did not have a GED; went to school part time; could read "a little bit;" and did "not know that well Nepali."  Tr. at 37-38.

---

[4]   The hearing transcript is somewhat unclear as to the issue of Rai's Nepali interpretation.  A Nepali interpreter was sworn in at the beginning of the hearing.  Tr. at 31.  The ALJ later appears to ask Rai questions directly, but it is not clear whether or not an interpreter was used.  Tr. at 36.  Rai's brief, however, states that "Ms. Rai testified at her hearing almost entirely through an interpreter," Doc. No. 9-1 at 3, and the Commissioner does not appear to dispute that assertion.  See Doc. No. 10-1 at 3-5.

After the ALJ finished interviewing Rai, Rai's representative questioned Elizabeth LaFlamme, a vocational expert ("VE"). Tr. at 42-44. LaFlamme was asked whether an individual with a sedentary work capacity but a "reading, math, and language, the GED [level] of 0 to 1" would be able to perform the job of an "addresser," "document preparer," or "surveillance system monitor."[5] Tr. at 43. LaFlamme replied that all three vocations would require greater language skills than a "0 to 1." Tr. at 43. The ALJ asked no follow-up questions. See Tr. at 43. The hearing concluded shortly thereafter, with no further discussion of Rai's language abilities or capacity to perform unskilled vocations. Tr. at 43-45. The next month, the ALJ issued her decision, finding that Rai had "a limited education and was able to communicate in English." Tr. at 24.

This finding was not supported by substantial evidence. As stated above, an ALJ may not derive her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35. Here, the ALJ provided no explanation as to how she concluded that Rai was able to communicate in English. See Tr. at 24. Her decision provides

---

[5] Disability adjudicator Sherri Connor had previously identified these three vocations as jobs that Rai could perform given her RFC and other limitations. Tr. at 63.

9

no commentary on Rai's stated language limitations; no account of what process was used, if any, to determine Rai's English level; and – perhaps most troublingly – no response to the VE's statements that a person with a "0 to 1" English capacity could not perform any of the three jobs the state had recommended for Rai.[6]  Instead, the ALJ simply concluded that Rai "was able to communicate in English," and applied the Grid to find that Rai was not disabled.  See Tr. at 24.  This conclusory statement is insufficient and warrants a remand.

   Our cases support this outcome.  Although the First Circuit has not squarely addressed the issue, the Second Circuit has made clear that the ALJ must first determine whether a claimant is literate and able to communicate in English before applying the Grid.  Vega, 636 F.2d at 903-904.  In Vega, the Second Circuit remanded in favor of a claimant who spoke limited English because the ALJ made no formal findings "on the questions of literacy and ability to communicate in English." Id. ("The absence of findings by the ALJ on the questions of literacy and ability to communicate in English is crucial . . . .").  Similarly, in Lugo, a claimant with limited English won a

---

[6] Admittedly, Rai's language abilities were not assessed, so it may be that Rai has a higher English level than "0 to 1."  Tr. at 43.  Without some further evaluation of Rai's English skills, however, I cannot properly assess the relevance of the VE's statement.

remand when the ALJ "did not specify the basis of his finding that Lugo could both speak and read some English." Lugo, 932 F.Supp. at 501 ("This finding [of the claimant's English abilities] is pivotal because it dictates which grid rule the ALJ will use as a framework for decisionmaking, and which type of testimony he will solicit from a vocational expert, if one is required."). Closer to home, in Banushi v. Barnhart, the court remanded because the ALJ failed to evaluate the claimant's English abilities despite record evidence that the claimant had difficulty communicating in English. 2007 WL 1858658, at *8-10 (D. Mass. June 26, 2007) ("[T]here is no indication in the decision that plaintiff's ability to communicate in English was considered in evaluating what work she could do . . . . The lack of a finding . . . constitutes legal error."). Courts have thus consistently ordered a remand where, as here, the ALJ provides no reasoned basis for her conclusion regarding a claimant's English ability.

The Commissioner argues that the ALJ properly concluded that Rai could communicate in English because Rai could "understand, read and write a *simple* message such as instructions or inventory lists." Doc. No. 10-1 at 3-5 (emphasis in original). To support this claim, the Commissioner points to Rai's ESL teacher's statement that the teacher

11

understood "up to two thirds" of Rai's conversation when the topic was known, and to Rai's representative's statement that Rai "does understand some English, so simple questions . . . are not going to be a problem."[7]  Doc. No. 10-1 at 4-5.

Although the Commissioner may be correct that Rai's English skills are good enough to work a sedentary job, her argument fails because the ALJ left no clue as to what evidence she relied upon to make her determination.  To the extent the ALJ may have relied on Rai's responses to the ALJ's questions during the hearing, Vega repudiates the idea that "a brief exchange" with the claimant may "substitute for a determination on the question of ability to communicate in English." Vega, 636 F.2d at 904.  At bottom, however, I cannot conclude that the ALJ properly supported her finding when the ALJ declined to provide any explanation as to how she reached that finding.  Indeed, it is a "simple but fundamental rule of administrative law" that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked

---

[7] The Commissioner also argues that Rai could satisfactorily speak English because she "was also able to complete the disability forms requested by the agency."  Doc. No. 10-1 at 4. The Commissioner appears to be mistaken, however: the form that she cites was filled out by a "Parsu Nepal," not Mamata Rai. Tr. at 160.

by the agency."  Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947).  On that standard, the ALJ's decision is unsupportable, and a remand is warranted.[8]

## IV.  CONCLUSION

For the foregoing reasons, Rai's motion to reverse the decision of the Commissioner (Doc. No. 9) is granted.  The Commissioner's motion to affirm (Doc. No. 10) is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the

---

[8] Although the Commissioner has not raised this issue, there are some circumstances where the Grid dictates a finding of "not disabled" even when a claimant is found "illiterate or unable to communicate in English."  See 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 201.23.  For claimants aged 18-44 who have the RFC to perform "a full range of sedentary work," the Grid explains that there are still "sufficient numbers of jobs" available despite the claimant's English limitations because "the bulk of unskilled work relate[s] to working with things (rather than with data or people)."  20 C.F.R. § Pt. 404, Subpt. P, App. 2, 201.00(h)(4)(i).  Here, however, even if the ALJ had supportably found that Rai was unable to communicate in English, sole reliance on the Grid would have been inappropriate because Rai did not have "a full range" of sedentary work.  See id. (emphasis added).  Rather, Rai had the RFC to perform sedentary work only with a host of restrictions, including "never climb[ing] ladders, ropes, or scaffolds . . . hav[ing] no concentrated exposure to temperature extremes, no exposure to hazards . . . limit[ing] [her work] to uncomplicated tasks such as those that typically can be learned in thirty days or less" and "hav[ing] unscheduled absences of not more than 1 day per month."  Tr. at 19.  Because these restrictions limit the sedentary work Rai can perform, it appears that Rai does not directly fit into any of the Grid's categories, and therefore sole reliance on the Grid would be improper.

case to the Social Security Administration for further proceedings consistent with this decision.

    SO ORDERED.


                                        <u>/s/Paul Barbadoro</u>
                                        Paul Barbadoro
                                        United States District Judge

January 14, 2016

cc:   Douglas Grauel, Esq.
      Robert Rabuck, Esq.